IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ROCK HILL DIVISION

| | |
|---|---|
| WAYNE E. CHILDERS, )<br>LINDA VANDEUSEN, )<br>ADVOCATES FOR DISABLED )<br>AMERICANS (AFDA), )<br>                  )<br>        Plaintiffs, )<br>v.                  )<br>                  )<br>                  )<br>                  )<br>COUNTY OF YORK SOUTH )<br>CAROLINA, )<br>                  )<br>                  )<br>       Defendant. )<br>_____) | Civil Action No. 0:06-897-CMC-BM<br><br>**REPORT AND RECOMMENDATION** |

This action has been filed by the Plaintiffs pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et. seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 791, et. seq.. Plaintiffs Childers and Vandeusen allege in count one of their Complaint that the Historic York County Courthouse is not accessible to handicapped persons in violation of the ADA and the Rehabilitation Act, and seek injunctive relief as well as monetary damages. In count three, Plaintiff AFDA seeks injunctive relief on behalf of its membership[1]

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on May 7, 2007. Summary judgment "shall be rendered forthwith if the pleadings,

---

[1] Plaintiffs' Complaint originally also contained a separate count two, which alleged violations of South Carolina law. Plaintiffs have now withdrawn their claims under South Carolina law. See Court Document Nos. 21, 23 and 24.

1



depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, in order to avoid summary judgment the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

After being granted an extension of time, Plaintiffs filed a memorandum in opposition to the Defendant's motion on June 7, 2007, following which Defendant filed a reply memorandum on June 25, 2007. A hearing was held on November 7, 2007, at which both sides were represented by able counsel. Pursuant to instructions from the Court, Plaintiffs filed a supplemental affidavit on November 15, 2007. Defendant's motion is now before the Court for disposition.[2]

### Background and Evidence[3]

Plaintiff Wayne Childers suffers from "Charcot-Marie Tooth Paralysis", a form of Muscular Dystrophy. He has difficulty walking and has been on Social Security Disability since 1988. See Plaintiff's Exhibits [To Whom It May Concern letter dated September 12, 2006; To Whom It May Concern letter dated April 26, 2007]. Plaintiff Linda Vandeusen has Dystonia[4] and

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]The facts and evidence are considered and discussed hereinabove in the light most favorable to the Plaintiffs, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

[4]Dystonia is a neurological movement disorder in which sustained muscle contractions cause twisting and repetitive movements or abnormal postures. http://en.wikipedia.org/wiki/Dystonia.

2



uses a wheelchair.  Complaint, ¶ 3; Plaintiff's Exhibits [Certification of Linda Vandeusen dated June 7, 2007].  A third named Plaintiff, Advocates for Disabled Americans (AFDA), is alleged to be a non-profit corporation conducting business in the State of South Carolina.

Plaintiffs Childers and Vandeusen allege that on numerous occasions they have been users of the Defendant's services at the Historic York County Courthouse, and that they were not physically able to use the facilities at that location.  Plaintiff Childers, a residential real estate appraiser, alleges that while the property appraisal officer used to fax property records to him, those services have been removed from him.  Childers further alleges that York County has no website for property records at this time.  Plaintiffs also allege that the Defendant does not provide proper disabled parking spaces, access aisles, accessible routes of travel, and properly accessible bathroom facilities at the Courthouse. In support of their claim, Plaintiffs make reference to the expert report of William B. Cody of William Cody Associates, Inc. (Court Document No. 14), wherein Cody opines that the historic County Courthouse contains numerous ADA violations, specifically with regard to its front, back and side entrances; proper handicapped parking; restroom facilities, and improper door hardware inside the building.  The report also states that Cody has reviewed the budget for York County for the years 2004 - 2006, and that in his opinion the budget does not address the money needed to allow an enhanced program access. See, Exhibit, Expert Report.

Defendant has not retained an expert, and does not contest that the courthouse building is structurally not ADA compliant. In support of summary judgment, the Defendant has submitted an affidavit from David Larson, Interim County Manager for York County, who attests that the County Courthouse building is a designated historical site and concedes that it is "in need of major renovations." Larson attests that, while most of the County Court functions have been relocated to

3



other facilities, the building continues to serve administrative functions such as the primary location of records of the Assessor's Office. Larson attests that the old Courthouse building has many major issues relating to fire safety, public access and egress, overall structural concerns relating to its age, and environmental concerns, that there is no quick and fast solution to the building's problems, and that any significant construction work in the building would trigger all of the other work that would be required to bring the building up to code. Because of these inter-relating needs, Larson attests that the Defendant cannot address disability access issues without also triggering the obligation to address structural concerns, plumbing problems, and code issues such as fire sprinkler requirements, which may in turn trigger obligations relating to environmental issues such as asbestos and lead pain removal. Larson further attests that the building has multiple split levels, that it cannot be made completely accessible to wheelchair users by adding a single elevator or a few ramps and chair lifts, and that studies conducted by the Defendant show that renovation of the building will require significant and substantial redesign by experienced design professionals.

Larson attests to various planning studies undertaken by the Defendant, all as is further set forth in his affidavit, and which have resulted in a twenty year facilities master plan which was approved by the York County Council in May 2003. The proposed historic courthouse renovations were estimated in May 2005 to have a cost of more than 3.5 million dollars, with a schedule of three years from selection of an architectural firm to complete construction. Larson attests that the overall cost of the twenty year capital plan resulted in the County Council calling a special public referendum on March 7, 2006 for the purpose of determining whether the Defendant would be permitted to incur general obligation debt of up to 75 million dollars toward a projected almost 219 million dollars for construction of several capital projects, which included renovation,



construction and equipping of improvements to the historic courthouse building. Larson attests that the public referendum failed, and that this lawsuit was filed two weeks after this failed referendum.

Larson attests that in light of the Defendant's inability to borrow the proposed funds after failure of the referendum, consultants prepared a scaled back facilities plan that was presented to the County Council as part of its 2006 - 2007 fiscal year budget deliberations. Larson attests that the modified capital facilities plan totaled over 92 million dollars for the first phase to cover a five year period extending through fiscal year 2010 -2011, and that this first phase included renovations to the historic courthouse, including renovations necessary for ADA compliance. Larson attests that the Defendant's expectation for the historic courthouse building is to address renovation in two phases so as to permit the continued use of portions of the building during construction, if possible, and that as currently anticipated, the first phase of construction will address issues of disabled access in primary respects, including access into the building, access to different levels inside the building, and accessible restrooms.

Larson further attests that, to the extent that the historic courthouse building is not fully accessible to all disabled individuals, the Defendant has at all times trained its employees to accommodate members of the public with access issues, that County employees are very sensitive to identifying and helping members of the public who need assistance in accessing County services to include identifying when assistance is needed, offering assistance, relocating activities to accessible locations, faxing and mailing information, developing and providing assistance and use of County website services, providing "curb service", and welcoming and granting reasonable requests for accommodation. With respect to the Defendant Childers, Larson attests that the Defendant has accommodated Childers' request to have information faxed to him at his home in



Kings Mountain, North Carolina. Larson attests that he has had no dealings or communications with Linda Vandeusen, and that he has no idea who she is. Finally, Larson attests that, to his knowledge, the Defendant does not receive federal funds to assist in its facilities planning and construction projects. See generally, Larson Affidavit.

The Defendant has also submitted an affidavit from Teresa Simmons, who attests that she is the Tax Assessor for York County. Simmons attests that all of the Defendant's residential property tax information has been available on-line through the County's website since at least early November 2002, and that all information that a residential real estate appraiser needs from the County Assessor's records can be obtained from the Defendant's website. Simmons attests that, several years ago, Plaintiff Childers (a residential real estate appraiser who lives in Kings Mountain, North Carolina), began asking employees in the Assessor's office to fax documentation to him, and that her office accommodated Childers' request. Simmons further attests that, after the Defendant's property tax records became available on-line through the Defendant's website, Childers continued to request that the Assessor's office fax its property record cards to him, and that her office continued to accommodate his requests, which were usually oral requests made by telephone.

Simmons attests that after Childers complained in 2004 that employees were not responding quickly enough to his requests, the Assistant County Attorney communicated with Childers, and that the result of those communications was that Childers would fax his requests to the Assessor's office, rather than communicate his requests orally. Simmons attests that the Assessor's office has and continues to fax tax cards to Childers within a reasonable time. Attached to Simmons affidavit is a copy of documentation showing Childers' fax requests to her office since February of 2005, and the fax response times. These documents reflect that most of Childers' requests were



responded to the same day as the request, and if not, they were responded to the following day.

Simmons attests that County employees, including employees in the Assessor's office, have had ongoing training about being sensitive to members of the public and offering whatever accommodations they can to individuals who wish to use County services, and that her office's policy and practice is to offer accommodations such as educating individuals on the use of the office's website, faxing and mailing information, and providing "curb service". Simmons attests that her office has continuously accommodated Childers' requests to have information faxed to him at his home in Kings Mountain, North Carolina, thereby saving him the substantial expense of money and time in round-trip travel between Kings Mountain and York. With respect to Plaintiff Vandeusen, Simmons attests that her office has had no dealings or communications with Vandeusen, and that she has no idea who Vandeusen is. See generally, Simmons Affidavit, with attached Exhibits.

**Discussion**

Plaintiffs have brought this action under Title II of the ADA as well as under the Rehabilitation Act. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Defendant does not dispute that it is a "public entity" for purposes of a Title II ADA claim. See 42 U.S.C. § 12131(1)(B). Defendant also does not dispute that the services it offers at the historic County Courthouse qualify as "services, programs or activities" for purposes of a Title II ADA claim. See also Johnson v. City of Saline, 151 F.3d 564, 569 (6th Cir. 1998) [finding that the phrase "services, programs, or activities" encompasses "virtually everything that a public entity does"]. The Rehabilitation Act imposes essentially the same requirements as the ADA. Levy v.

7



Mote, 104 F.Supp.2d 538, 543 (D.Md. 2000); Smaw v. Commonwealth of Virginia Department of State Police, 862 F.Supp. 1469, 1474 (E.D.Va. 1994) ["By design, the ADA standards mirror those of the Rehabilitation Act....The emergence of the ADA does not create a new avenue for claims in the area of disability discrimination; rather, the ADA incorporates the existing language and standards of the Rehabilitation Act in this area."]; see also 29 U.S.C. § 794(a).

### (Timeliness and Applicability of Claims to Natural Plaintiffs)

Although subject to suit under the ADA and the Rehabilitation Act[5], Defendant argues that Plaintiffs' claims are time barred as having been filed outside of the applicable statute of limitations. Neither the ADA nor the Rehabilitation Act contain a statute of limitations. However, pursuant to 42 U.S.C. § 12134(a), the Attorney General is empowered to promulgate regulations to effectuate the purposes of Title II of the ADA, and pursuant to this authority 28 C.F.R. § 35.170(b) has been promulgated requiring that a complaint under Title II against a public entity be filed within one hundred and eighty (180) days of the alleged discriminatory act. White v. University of South Carolina, No. 93-1293, 1996 WL 276540, at *2 (D.S.C. 1996). As for the Rehabilitation Act, the most appropriate or analogous statute of limitations derived from the state law most applicable to this federal statute is to be used. 42 U.S.C. § 1988(a); Wilson v. Garcia, 471 U.S. 261, 268 (1985).

Plaintiffs argue that South Carolina's general three year statute of limitations as

---

[5]The Rehabilitation Act provides, in relevant part, that "[n]o otherwise qualified individual with a disability in the United States,...shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity *receiving Federal financial assistance....*" 29 U.S.C. § 794(a) [emphasis added]. Although Larson attests in his affidavit that the Defendant does not receive federal funds to assist in its facilities planning and construction projects, no argument has been made by the Defendant for purposes of summary judgment that it is not subject to suit under the Rehabilitation Act because it does not receive federal financial assistance for purposes of Plaintiffs' claim. Therefore, this issue has not been addressed by the undersigned in this Report and Recommendation.

8



contained in S.C.Code Ann. § 15-3-530(2)[6] should apply to their Rehabilitation Act claims. The undersigned does not agree. The South Carolina Human Affairs Law; S.C. Code Ann. § 1-13-10, et. seq.; which was passed by the South Carolina Legislature specifically to address claims of discrimination occurring in South Carolina, including discrimination based on disability, is the most analogous state statute to the federal statute at issue. *Cf.* Moore v. Greenwood School District No.52, 195 Fed.Appx. 140, 143 (4th Cir. 2006) [applying standards of the South Carolina Human Affairs Law to a case brought under Title IX]; Wolsky v. Medical College of Hampton Roads, 1 F.3d 222, 224 (4th Cir. 1993) [finding that one year statute of limitations provided by the Virginia Human Affairs Law was most analogous statute for claim brought under the Rehabilitation Act]. The South Carolina Human Affairs Law provides that a claimant may file a lawsuit within one year from the date of the violation alleged. See S.C.Code Ann. §§ 1-13-90(d)(7) and (8), (e) and (f). Therefore, Plaintiffs had one year from the date of an alleged violation to file their claim under the Rehabilitation Act.

       This lawsuit was filed on March 20, 2006. Therefore, under the applicable limitations periods, Plaintiffs' claims for relief under the Rehabilitation Act cannot extend to any alleged claim that arose prior to March 20, 2005, while any claim being pursued under Title II of the ADA must be based on an alleged claim arising after September 22, 2005. While the undersigned agrees with the Plaintiffs that, under appropriate circumstances, a "continuing violation" may be found for violations outside of a limitations period, that doctrine is only applicable where there has been an actual violation during the limitations period. Pickern v. Holiday Quality Foods, 293 F.3d 1133, 1137

---

[6]Plaintiffs actually cited a different S.C. Code section; however, the undersigned assumes Plaintiffs meant to refer to S.C.Code Ann. § 15-3-530(2).

9



(9th Cir. 2001) ["A plaintiff has no cause of action under the ADA for an injury that occurred outside the limitations period. But he or she has a cause of action, and is entitled to injunctive relief, for an injury that is occurring within the limitations period, as well as threatened future injury"]; see also Pickern v. Best Western Timber Lodge Marina Resort, No. 00-1637, 2002 WL 202442, at *5 (E.D.Cal. 2002) [finding that the statute of limitations began anew each time the plaintiff stayed in a motel and encountered ADA violations]. The question, therefore, is whether Plaintiffs have established a violation during the applicable time periods.

After careful review of the evidence and arguments presented, the undersigned can find no violation within the limitations periods with respect to the Plaintiff Vandeusen. While Childers' use of the facilities at the historic courthouse are well documented, there is no evidence that Plaintiff Vandeusen has ever attempted to use the facilities in that building, or has indeed ever even been to the courthouse. In her response to the Defendant's interrogatories, wherein Vandeusen was asked to identify the dates and duration of any visits or attempt to visit the location, she responded only that she "desire[d] to use the services and wanted to review the Defendant's transition plan, but was unable to." She does not provide the date that this visit reportedly occurred, nor has she provided any evidence in response to the Defendant's motion for summary judgment to show any attempt by her to enter the courthouse and use the services there within the applicable time limits, if indeed she has ever done so at all. See also, Larson Affidavit, ¶ 19; Simmons Affidavit, ¶ 13. Any claim for damages by Vandeusen is therefore subject to dismissal. *Cf.* Roberts v. County of Nassau, 140 Fed.Appx. 277, 279 (2nd Cir. 2005) [summary judgment granted where plaintiff did not allege any allegations stating claim that occurred within statute of limitations period].

As for any claims for injunctive relief by Vandeusen, she has again presented no

10



evidence to show that she has used or will ever use the historic courthouse, other than to simply assert (through counsel in Plaintiffs' brief in opposition to Defendant's motion) that she "wants to use the Defendant's services in its Old Courthouse Building." Plaintiffs' Brief, at p. 7. This is not evidence sufficient to avoid summary judgment on her claim for injunctive relief. See Estrella v. Bryant, 682 F.2d 814, 819 (9th Cir. 1982) [legal memoranda are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment]; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) [there must be evidence on which the fact finder could reasonably find for the Plaintiff]; Gans v. Gray, 612 F.Supp. 608, 619 (E.D.Pa. 1985) [mere statements made in counsel's briefs or at oral argument are not evidence for the purpose of supporting or opposing a motion for summary judgment]; cf. Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1358 (4th Cir. 1995) [counsel's statements are not evidence]. In order to obtain prospective injunctive relief, a plaintiff must demonstrate "a real and immediate threat" or injury in order to satisfy the "injury in fact requirement." Clark v. Burger King, 255 F.Supp.2d 334, 341-342 (D.N.J. 2003), quoting City of Los Angeles v. Lyons, 461 U.S. 95, 103-104 (1983); Levy v. Mote, 104 F.Supp.2d at 544; see also Proctor v. Prince George's Hosp.Ctr., 32 F.Supp.2d 830, 832 (D.Md. 1998) [To have standing for injunctive relief, a plaintiff must demonstrate that he or she will suffer injury which is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"]; cf. Holt v. American City Diner, Inc., No. 05-1745, 2007 WL 1438489, at *7 (D.D.C. May 15, 2007) [Plaintiff asserting claim for injunctive relief under ADA can obtain such relief only if they "can show a plausible intention or desire to return to the place of injury but for the barriers to access"]. Since Vandeusen has failed to demonstrate "a real and immediate threat" of future injury, and has also presented no evidence to support her claim for monetary damages, the Defendant is

11



entitled to summary judgment with regard to any claims being asserted by Vandeusen, and she should be dismissed as a Plaintiff in this case.

With respect to the Plaintiff Childers, however, Defendant's own evidence shows that this Plaintiff continues to access the Defendant's facilities and to use information obtained from the Assessor's office within the limitations period. See Simmons Affidavit, with attached Exhibit. The Defendant is therefore not entitled to summary judgment against Childers based on a statute of limitations argument.

**(Discrimination Claim)**

In order for Childers to establish his claim for disability discrimination under Title II of the ADA, he must prove 1) that he has a disability; 2) that he is otherwise qualified for the benefit in question; and 3) that he was excluded from the benefit due to discrimination solely on the basis of the disability. Levy v. Mote, 104 F.Supp.2d at 544, citing Doe v. University of Maryland Medical Systems Corp., 50 F.3d 1261, 1265 (4th Cir. 1995). A "disability" means that the individual has a) a physical or mental impairment that substantially limits one or more one of the major life activities of the individual; b) a record of such an impairment; or c) being regarded as having such an impairment. 42 U.S.C. § 12102(2).

Defendant asserts Childers fails to meet the requirement of having a "disability" for purposes of a Title II or Rehabilitation Act claim. Larson attests in his affidavit that it has been his "personal observation" that, while Childers "is a very heavy man, he does not have an apparent disability." Larson Affidavit, ¶ 16. Similarly, Simmons attests in her affidavit that while Childers "is a very heavy man, he does not have an apparent disability. In his visits to our office, he has necessarily used the stairs." Simmons Affidavit, ¶ 8. However, these statements are both lay



opinions. Defendant has presented no medical evidence to refute Plaintiff's claim of disability. In his response to the Defendant's interrogatories, Childers states that he suffers from Charcot-Marie Tooth Disease, a form of Muscular Dystrophy, and that he has been "disabled" since 1988. Childers further states that he has severe difficulties walking and that it is almost impossible for him to climb steps or hunt and pull files from file cabinets that are level with the floor. Childers has also provided a sworn statement from Dr. Stephen Jones, in which Dr. Jones confirms that Childers has a history of Muscular Dystrophy and opines that this condition has resulted in "restrictions on [his] capacity for major life activities such as walking". Dr. Jones further states that Childers is "too weak to climb stairs required on his job", and notes that he has been on Social Security Disability since 1988. See Plaintiff's Exhibit ["To Whom It May Concern" letter dated April 26, 2007] (Court Docket No. 48). Finally, in response to a request for production of documents from the Defendant, a letter from the Office of the York County Attorney addressed to Childers dated March 29, 2005 was produced. This letter relates to the meeting between Childers and Assistant County Attorney Michael Kendree concerning his complaints of lack of access. This letter sets forth the "accommodation" to be provided to Childers for his "specific disability consistent with [his] request to resolve [his] tax card information access question."

This evidence is sufficient to create a genuine issue of fact as to whether Childers has a "disability" for purposes of an ADA claim to survive summary judgment. Muhammad v. Klotz, 36 F.Supp.2d 240, 243 (E.D.Pa. 1999) ["Thus, at the summary judgment stage the only inquiry is the threshold one of determining whether there is the need for a trial, that is, 'whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail as a matter of law'"], citing Anderson v. Liberty Lobby, Inc., 477



U.S. 242, 250-252 (1986); 29 C.F.R. § 1630.2(i) [defining "major life activity" as a basic activity that an average person can perform with little or no difficulty, including walking, standing, lifting and working]; see Bruncko v. Mercy Hosp., 260 F.3d 939, 941 (8th Cir. 2001); Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 726-727 (5th Cir. 1995); Gupton v. Virginia, 14 F.3d 203, 205 (4th Cir. 1994), cert. denied, 513 U.S. 810 (1994) ( Rehabilitation Act);  see also See MacDonald v. Delta Airlines, Inc., 94 F.3d 1437, 1443 (10th Cir. 1996),  citing Dutcher, 53 F.3d at 727 [holding that a Plaintiff might qualify as disabled under the ADA if he provides sufficient summary judgment evidence that he was "regarded by [the Defendant] as having an impairment that substantially limited a major life activity, whether he actually had such an impairment or not."].

The evidence before the Court is also sufficient to establish for purposes of summary judgment that, as a real estate appraiser with need to access information in the County Assessor's office, Childers is "otherwise qualified for the benefit in question".  Therefore, the issue becomes whether the evidence, considered in the light most favorable to Childers, creates an issue of fact as to whether he was "excluded from the benefit due to discrimination solely on the basis" of his disability. Levy v. Mote, 104 F.Supp.2d at 544; see 42 U.S.C. § 12132 [providing that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs or activities of a public entity..."].

In determining whether Childers was "excluded from the benefit" of the public service at issue due to his disability, it is important to note that the regulations implementing Title II do not generally require substantial changes to existing buildings. Coalition of Montanans Concerned with Disabilities v. Gallatin Airport Authority, 957 F.Supp. 1166, 1168 (D.Mont. 1997).  Rather, with respect to existing buildings such as the historic courthouse at issue in this case, public entities are

14



required to operate the programs, services and activities at issue in such a manner that, when viewed in its entirety, they are readily accessible to and usable by individuals with disabilities. 28 C.F.R. § 35.150(a); see Pascuitti v. New York Yankees, et al., 87 F.Supp.2d 221, 223 (S.D.N.Y. 1999). This can be accomplished by the reassignment of such services to accessible buildings, assignment of aides to assist disabled persons, delivery of services, alteration of existing facilities and/or construction of new facilities, or other such means of accomplishing this requirement. Further, while a public entity is required to give priority to those methods that offer services, programs, and activities to qualified individuals with disabilities in the most integrated setting appropriate, it is not required to fundamentally alter the nature of the service or program or endure any "undue financial and administrative burden". 28 C.F.R. § 35.150(a)(3); 28 C.F.R. § 35.150(b)(1); see also Kinney v. Yerusalim, 812 F.Supp. 547, 548 (E.D.Pa. 1993); Levy v. Mote, 104 F.Supp.2d at 546-547.

Evaluated under these standards, the evidence here reflects that Childers is a real estate appraiser who needs to obtain information from the County Assessor's office located at the historic courthouse on a frequent and regular basis. In response to Defendant's interrogatories, Childers states that he performs from three to five appraisals weekly, and that he is therefore in need of property information quickly (which he describes as being from within one to six hours). He states that he has severe difficulties walking and that it is almost impossible for him to climb steps and also impossible to pull files from file cabinets at a level with the floor, a disability which prevents him from accessing the information he needs due to the Courthouse's current structural condition. Childers also complains that, while the Assessor's office agreed to fax him property tax cards, this service is not performed in a timely enough manner sufficient to meet his needs.

Defendant's evidence reflects that the Assessor's office faxes Childers material he



requests either the same day or the next day. Simmons further attests in her affidavit that all of the County's residential property tax information has been available on line through the County's website since at least November 2002. However, she also acknowledges that there may be some additional information contained in the tax cards faxed to Childers that is not on the County's website (although she opines that residential real estate appraisers should not rely on that information). In response to this evidence, Childers has submitted a certification wherein he certifies under penalty of perjury that "[t]he proposed accommodations by the Defendant are not adequate in that they take up to two days and in the past up to four days to supply what I need". Childers further certifies that the "computer limitation is not adequate because it only supplies one year of records. I need at least three years to properly conduct my job." See Childers Certification. No additional evidence has been provided by way of affidavits, other exhibits, or deposition testimony.[7]

With respect to possible renovations to the Courthouse to make it ADA compliant, while the Defendant has submitted evidence to show various plans by the County to initiate renovations at the Courthouse to address ADA concerns, no definitive dates for this work to occur have been provided, nor has any evidence been submitted to show when any such construction is scheduled to begin. Therefore, this case does not present the type of facts presented in Levy v. Mote, where the court granted summary judgment after finding, in part, that during the pendency of the lawsuit the Defendant had made attempts to renovate the subject property in order to make it compliant with the ADA. Levy v. Mote, 104 F.Supp.2d at 541; see also Access 4 All, Inc. v. Casa Marina Owner, LLC, 458 F.Supp.2d 1359, 1365 (S.D.Fla. 2006) [motion to dismiss granted where

---

[7]There is no indication in the record that any depositions were taken during the discovery period.



"defendant's plans for ADA compliant renovations were already in effect prior to [p]laintiffs' filing their lawsuit, thus making it absolutely certain that any future ADA violations at the [facility] could not be reasonably expected to occur"]; *cf.* Morrell v. Barter Foundation, Inc., 07-00003, 2007 WL 1412960 (W.D.Va. 2007). Additionally, while Defendant's evidence is that it would cost substantial sums to undertake the necessary renovations; see Larson Affidavit; Plaintiff has presented evidence to show that renovations necessary to remedy the problems identified in this lawsuit could be made at a relatively small cost. See Expert Report of William Cody Associates, Inc.

In sum, while this evidence reflects an effort on the part of the Defendant to accommodate Childers, the undersigned is unable to find *as a matter of law* that the Defendant's actions have, when viewed in their entirety, made the services at issue accessible and usable by individuals such as Childers, or that "[n]o reasonable trier of fact could conclude" that a violation of the ADA and or the Rehabilitation Act has occurred. Spratley v. Hampton City Fire Department, 933 F.Supp. 535, 542 (E.D.Va. 1996), aff'd, 125 F.3d 848 (4th Cir. 1997); Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980) [At summary judgment, where a conflict from a set of given facts exists, the Court is required to consider the facts presented, and all inferences to be drawn from the facts, in the light most favorable to the non-moving party]; Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ["credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts" are functions for the trier of fact, and at summary judgment the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."]. Rather, in assessing whether any injunctive relief is proper in this case, it will be necessary for the trier of fact to determine whether, under the evidence presented, the Defendant's services are "readily accessible to and usable by individuals with disabilities", and whether the alterations requested by the Plaintiff



would constitute an "undue financial and administrative burden". 28 C.F.R. § 35.150(a). *Cf.* Pascuiti, 87 F.Supp.2d at 223 [Plaintiff may be entitled to relief if he can show that the public service, viewed in its entirety, is not readily accessible to and usable by individuals with disabilities, and suggests a plausible method of making the service readily accessible, the costs of which, facially, do not clearly exceed its benefits.].

With respect to damages, Childers states in his interrogatory responses that he incurred loss of income in the amount of $248,400.00 over the period 2001-2006 due to the Defendant's policies and lack of access. Of course, absent a finding of a continuing violation, Plaintiff will only be able to obtain monetary compensation for any damages he can prove he incurred during the limitations period previously discussed herein, supra. What amount that would be, if any, in the event Childers is able to prevail on his discrimination claim would be based on the evidence and is a matter for trial. *Cf.* Matthews v. Jefferson, 29 F.supp.2d 525, 535-536 (W.D.Ark. 1998). Further, while the evidence submitted at this juncture is arguably too non-specific to justify an award in the amount stated, since Childers may be entitled to nominal damages in any event (assuming he prevails on the merits of his underlying claim), Defendant is not entitled to summary judgment on Childers' damages claim at this time. *Cf.* Tandy v. City of Wichita, 380 F.3d 1277, 1289 (10th Cir. 2004); Johnson v. Nationwide Industries, Inc., No. 77-1162, 1985 WL 2003 at *3 (N.D.Ill. July 1, 1985) ["An inability to show more than minimal damages, however, is not equivalent to a failure to prove any damages, and it is therefore apparent that summary judgment be denied."]; Scallon v. U.S. Ag Center, Inc., 42 F.Supp.2d 867, 872 (N.D. Iowa 1999).

**(Plaintiff AFDA)**

Finally, Defendant argues that the Plaintiff AFDA does not have standing to even



appear in this case, and that it is therefore not entitled to any injunctive relief. To be entitled to standing in this case, the AFDA has to show either that it has organizational standing, meaning that it has "such a personal stake in the outcome of the matter to warrant [its] invocation of federal court jurisdiction," or that it has representational standing, which requires at least one of its members to have standing to sue in their own right, among other requirements. Maryland Highways Contractor's Ass'n, Inc. v. State of Maryland, 933 F.2d 1246, 1250 (4th Cir. 1991); Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 155 (4th Cir. 2000); see Goldstein v. Costco Wholesale Corp., 278 F.Supp.2d 766, 769 (E.D.Va. 2003). Since Plaintiff Vandeusen (who is a member of the AFDA) is recommended for dismissal in this action, and since Childers is not alleged to be a member of the AFDA, the AFDA is not entitled to representational standing as it has no member with standing to sue in their own right. Therefore, in order to have standing in this case, it is necessary for the AFDA to show that it is entitled to organizational standing. White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005); Citizens to End Animal Suffering and Exploitation, Inc., 836 F.supp. 45, 51-52 (D.Mass. 1993).

Reviewing the facts and evidence submitted in this case, it is readily apparent that the AFDA is not entitled to organizational standing. In order to demonstrate a personal stake in the outcome of the matter sufficient to survive summary judgment, the AFDA needs to present evidence to create a genuine issue of fact as to whether it has suffered a "concrete and demonstrable injury to the organization's activities" thereby impairing its ability to do its work, such as the diverting of resources, time, and money from its primary activities in order to pursue legal efforts to fight discrimination by the named Defendant. Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982). However, "[w]hen an organization's primary source of revenue is litigation directed against alleged



discrimination, it cannot be said that the organization's participation in such litigation impairs its ability to do its work." Goldstein, 278 F.Supp.2d at 771.

The AFDA alleges in the Complaint that it is a "non-profit corporation [the goal of which] is in part to enforce the rights of the disabled community by advocating civil rights [to enable its] members and other people with disabilities to lead full, independent, and productive lives." Complaint, ¶ 5. Since no other information is provided about the AFDA, other than its own identification of itself as an organization created for the purpose of remedying and eliminating discrimination in American society, there is no evidence before the Court to show anything but that the AFDA is an organization created for the purpose of pursuing litigation of the type currently before the Court in this lawsuit. Therefore, it is not entitled to organizational standing. Goldstein, 278 F.supp.2d at 771. Defendant's motion for summary judgment with respect to the AFDA should be granted.

## **Conclusion**

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment with respect to all claims presented by the Plaintiffs Vandeusen and AFDA be **granted**, and that these Plaintiffs be **dismissed** as party Plaintiffs in this case. Defendant's motion with respect to the claims made by the Defendant Childers should be **denied**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina
November 26, 2007

20

