IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| WAYNE E. CHILDERS, LINDA VANDEUSEN, and ADVOCATES FOR DISABLED AMERICANS, <br><br>　　　　　Plaintiffs,<br><br>COUNTY of YORK SOUTH CAROLINA,<br><br>　　　　　Defendant. | C.A. No. 0:06-897-CMC-BM <br><br>**OPINION AND ORDER** |

This action under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et. seq.* was tried non-jury on May 7, 2008. Having considered all of the testimony, documentary evidence, exhibits, stipulations of fact, and arguments of counsel, and considering the relevant law, the court enters the following Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. To the extent that any findings of fact represent conclusions of law, or vice-versa, they shall be so regarded.

## FINDINGS OF FACT

1.  The court finds Plaintiff Wayne E. Childers is disabled as defined by the ADA. Childers suffers from a form of muscular dystrophy which substantially limits one or more major life activities, including walking and lifting. Given the nature of his occupation, it also causes him to encounter difficulties in performing his work.

2.  Childers is a residential and commercial real estate appraiser licensed in South Carolina and North Carolina who obtains business primarily through the internet and from referrals. Childers lives in Kings Mountain, North Carolina.

3. The County Assessor for York County, South Carolina, maintains internal appraisal records that are useful to real estate appraisers, as well as other members of the public, referred to as "tax cards." The tax cards are work cards kept in the York County Tax Assessor's office and are used by tax assessors and mappers to perform their duties. When in use by County employees for these purposes, the cards are not available to the public. The cards may also be unavailable at times because the County is in the process of scanning all cards which requires that the cards be removed from the files for a period of time. Tax cards in York County are not online, although some information contained on the tax cards is available through the internet.

4. The Assessor's office is housed in the historic York County courthouse building, located at 2 South Congress Street in York, South Carolina. The historic courthouse building is not ADA compliant. Reaching the Assessor's office currently requires the use of steps and, therefore, the office is not fully accessible to Childers.

5. The County has a master plan that includes complete renovation of the historic courthouse building, which has a multitude of problems in addition to lack of accessibility. The County has hired an architect to develop plans to renovate the building, and has pending budget proposals of approximately four million dollars for a two-phase construction plan. If funding is approved as anticipated, the County expects construction to be complete and the facility to be fully accessible by late 2009 or early 2010.

6. Childers met with County representatives in 2004 to discuss an accommodation that would allow him to access the tax cards located in the Assessor's office without having to physically enter the courthouse. A letter setting out the County's understanding of the agreement reached at that meeting states that Childers indicated that he would fax requests for documents to the Assessor's

office and the Assessor's office would then fax copies of the tax cards to Childers within three days of its receipt of his request. Childers maintains he did not agree to these arrangements. However, he did not respond to the County's letter stating its understanding of the "agreement." Therefore, the court finds that the County believed this to be an acceptable arrangement at the time the letter was sent and thereafter.

7. Following the 2004 letter, a clerk was assigned the task of responding to Childers' facsimile requests with instructions to respond as soon as possible.

8. Several non-disabled real estate appraisers have asked the Assessor's office to fax them tax cards. The Assessor's office has declined these requests and has not offered this service to any individual except Childers.

9. On average, the Assessor's office faxes tax cards to Childers within one day of his request. Responses sometimes require slightly longer than one day but rarely more than two days. (At times, tax cards are not available for the reasons addressed in paragraph three above.) While many individuals fax requests for information other than tax card records to the Assessor's office, Childers's requests for faxed tax cards are given some priority.

10. Childers' experience with similar offices in other counties (including Mecklenburg and Catawba, both counties in North Carolina) is that those offices either have all information available through the internet or will provide the requested information within one hour of a telephonic request.

11. In affidavit testimony admitted by agreement, David Larson, the York County Assistant County Manager (at that time also the Interim County Manager), stated that the County offers multiple accessibility alternatives to disabled individuals. These alternatives include curb

service, which involves having County employees deliver documents to individuals who drive to an inaccessible building and wait in their vehicles. Childers has not utilized the County's curb service. While the record is unclear about when Childers was first made aware of this alternative, it is clearly available to him at the present time.

12. Therefore, the court finds that Childers has the option of calling the Assessor's office to schedule curb service. This will allow him to have copies of tax cards brought to him in his vehicle. In the alternative, he may continue to fax requests for tax cards to the Assessor's office, and thus continue to receive tax cards from the County by fax. While the fax option may require longer response time, it saves Childers the time and expense of driving to the courthouse to collect the records in person.

13. Childers may also access tax information concerning property in York County, South Carolina from the County's website (www.yorkcountygov.com). However, the County's website does not include all of the information contained on the tax cards maintained in the Assessor's office, such as square footage of the building, the date the building was constructed, all sales of the property that have occurred in the last three years,[1] and the size of the parcel of property.

14. Childers testified that he has lost appraisal business because of delay in having tax cards faxed to him. However, he presented only general testimony as to that allegation, and offered no documentary support for his estimate that he lost approximately thirty jobs since October 2005

---

[1] Evidence at trial indicated that information regarding past sales of property was not available on the York County website. Following trial, the County submitted evidence that sale information for at least the preceding three years is available on the website. For purposes of this order, the court disregards the post-trial submission. However, evidence on this point is not determinative for reasons discussed below.

as a result of such delays. On cross examination, Childers was unable to identify any specific instance where he lost an appraisal due to delay by York County in responding.

## CONCLUSIONS OF LAW

**Applicable Standard.**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. For Plaintiff to prove that a public program or service has violated Title II, he must satisfy three statutory elements: (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Levy v. Mote*, 104 F. Supp. 2d 538, 543 (D. Md. 2000) (citing *Doe v. University of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995)). In addition, because "liability may not be found in a vacuum," a plaintiff must "show, by competent evidence, that a defendant's violation of the ADA caused him actual injury before such plaintiff can recover." *Id.* at 544 (stated in context of requirements for standing); *see also id.* at 546-47 (finding claim for damages failed because any actual injury resulted from a third-party decision to rent Defendant's sole non-accessible facility for the relevant functions despite the availability of a number of other accessible options which made Defendant's "services, programs or activities . . . readily accessible when viewed in their entirety"). *See generally United States v. Georgia,* 546 U.S. 151, 154 (2006) ("Title II [of the ADA] authorizes suits by private citizens for money damages against public entities that violate § 12132.")

The regulations implementing Title II establish the following specific standards:

> A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability –
> (1)(ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;
> (1)(iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others.

28 C.F.R. § 35.130(b)(1)(ii)-(iii).

> (7) A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7).

Section 35.150, which addresses ADA requirements for existing public facilities, is also relevant to this discussion: "A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and useable by individuals with disabilities." 28 C.F.R. § 35.150(a). The "methods" section of the regulation makes specific recommendations regarding compliance:

> [A] public entity may comply with the requirements of this section through such means as redesign of equipment, reassignment of services to accessible buildings, assignment of aides to beneficiaries, home visits, *delivery of services at alternate accessible sites*, alteration of existing facilities and construction of new facilities, use of accessible rolling stock or other conveyances, *or any other methods that result in making its services, programs, or activities readily accessible to and usable by individuals with disabilities*.

28 C.F.R.§ 35.150(b)(1) (emphasis added).

6

In summary, Section 35.130(b)(1) requires that individuals with disabilities be provided an *equal opportunity* to participate in or benefit from services provided by the County while Section 35.130(b)(7) requires the County to make *reasonable modifications* to policies, practices or procedures as necessary to avoid discrimination absent circumstances not relevant here. Section 35.150, which is specific to facilities, requires the County to operate so that, when viewed in their entirety, its services, programs and activities are *readily accessible to and useable* by individuals with disabilities. As explained in subpart (b)(1), this may be done through use of alternative sites or "any other methods" that will achieve this result. Because the court concludes that the County's alternative means of delivery of the services desired by Childers satisfy each of these standards, it need not decide whether the standards might require different results and, if so, whether all of the standards are equally applicable to Childers' claims.

**Application of Facts to Law.**

1.  Childers is a qualified individual with a disability. He therefore satisfies the first element of a claim under Title II of the ADA.

2.  Childers has not, however, established that he was excluded from participation or denied the benefits of York County's services as required by the second element of his claim.[2] While Childers may not be afforded full and equal access *to the physical facility*, the County's multiple alternative means of delivering the desired service renders that service at least equally accessible to Childers as it is to other users without disabilities and, likewise, amounts to a

---

[2] Because he fails to establish the second element, he necessarily cannot establish that a denial of benefits was "by reason of his disability," as required by the third element.

reasonable modification of the procedures necessary to make the services as readily accessible to and useable by Childers as they are to a non-disabled individual.

  3.  These alternative means include partial records online (which may be used when only the partial information is required), facsimile transmission of complete information on request (with a limited delay which the court finds not to be unreasonable), and the availability of curb service (when more information is required than is available on line and delay for a facsimile response is not acceptable). Even assuming Childers was not expressly offered curb service prior to litigation, it is indisputably available to him now.[3]

  4.  Even if Childers has proved a violation, he has not proved that the manner in which the County has been providing him with information (via facsimile and with other alternative means available) has caused him any actual injury. That is, he has not proved that the County's alternative means of delivery have interfered with his ability to perform his job as a real estate appraiser or have caused him to lose any business. Because Childers presented no non-speculative evidence of actual damages, the court granted judgment as a matter of law on his claim for damages at the close of Plaintiff's case. In any event, because there is no violation, there can be no recoverable damages.

  5.  Childers has also failed to prove that there is any need for an injunction to require the County to make the facility accessible. The undisputed evidence is that the County is proceeding with plans to renovate the facility and make it accessible. In the interim, the County offers multiple means of delivery of its services which the court finds satisfy the relevant standards under Title II of the ADA as discussed above.

---

[3] As discussed during the trial, records will normally be available upon Childers' arrival at the courthouse assuming he provides at least thirty minutes notice to the Assessor's office.

Therefore, it is ORDERED, ADJUDGED, AND DECREED that judgment be entered in favor of Defendant York County, South Carolina, and that Plaintiff Wayne E. Childers takes nothing.

AND IT IS SO ORDERED.

S/ Cameron McGowan Currie<br>CAMERON MCGOWAN CURRIE<br>UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
June 23, 2008